IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YASUTAKA SUZUKI,<br><br>   Plaintiff,<br><br> vs.<br><br>ANDREW SAUL,<br><br>   Defendant. | CIVIL NO. 19-00390 JAO-RT<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO REMAND TO SOCIAL SECURITY ADMINISTRATION AND REMANDING FOR FURTHER PROCEEDINGS** |

**ORDER GRANTING DEFENDANT'S MOTION TO REMAND TO SOCIAL SECURITY ADMINISTRATION AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Yasutaka Suzuki ("Plaintiff") appealed Defendant Andrew Saul, Commissioner of Social Security's ("Commissioner") denial of his application for benefits under Title II of the Social Security Act. Plaintiff asked the Court to reverse the Commissioner's decision finding he lacked the required quarters of coverage needed to be fully insured and was therefore ineligible for retirement benefits. Although the Commissioner initially asked the Court to affirm the administrative law judge's ("ALJ") decision upholding the denial of retirement benefits, he now asks the Court to remand the case for further administrative proceedings based on additional evidence not contained in the administrative record. For the reasons stated below, the Court GRANTS the Commissioner's

motion and REMANDS the case for further administrative proceedings consistent with this Order.

## I. BACKGROUND

### A. Administrative Proceedings

Plaintiff applied for Retirement Insurance Benefits under Title II of the Social Security Act in May 2015. *See* Administrative Record ("AR") at 13–14, 59–60. The Social Security Administration ("SSA") denied his application in July 2015 because he only had 32 quarters of coverage, and needed 40 quarters of coverage to be fully insured and eligible for retirement benefits.[1] *See id.* at 66–68. The SSA noted that Plaintiff's earnings from ILHD, Inc.[2] for 2008, 2011, and 2013 were not considered because they did not qualify as wages. *See id.* Plaintiff sought reconsideration, but the SSA again denied his request in February 2016. *See id.* at 89–92. In denying reconsideration, the SSA noted that it had asked

---

[1] To be "fully insured," an individual must have either (1) one quarter of coverage for each calendar year after he turned 21 and before he turned 62, or (2) 40 quarters of coverage. *See* 42 U.S.C. § 414(a); 20 C.F.R. §§ 404.110–404.115. A "quarter of coverage" is the basic unit of social security coverage used to determine a worker's insured status, and a "quarter" is defined as a period of three calendar months ending March 31, June 30, September 30, or December 31 of any year. *See* 20 C.F.R. §§ 404.140(a), 404.102. Since 1992, the amount needed to count as a "quarter of coverage" is $570. *See* 20 C.F.R. § 404.143; 20 C.F.R. pt. 440, subpt. B, app.

[2] Plaintiff contends he was an employee of ILHD, Inc., an online business that was in the developmental phase of selling information to Japanese residents about how to cheaply earn airline mileage. *See* AR at 17.

2

Plaintiff for information about his reported earnings from ILHD, Inc. in February 2014 and reaffirmed that it could not use earnings from ILHD, Inc. for 2007 through 2013, and thus that Plaintiff only had 32 quarters or coverage—short of the 40 quarters of coverage necessary to be fully insured. *See id.*

Plaintiff requested a hearing before an ALJ in March 2016. *See id.* at 93. The ALJ held hearings in August 2017 and February 2018. *See id.* at 14, 522–57. In April 2018, the ALJ issued his decision. *See id.* at 10–21. Relevant here, the ALJ first concluded that Plaintiff's tax returns showed wages of $12,000 for each year from 2008 through 2014 and wages of $5,000 in 2015, which is well in excess of that required for the necessary quarters of coverage. *See id.* at 16.

However, the ALJ then concluded that the SSA timely removed Plaintiff's earnings from ILHD, Inc. for 2008 through 2015 because the work for those earnings could not be proven. *See id.* As the ALJ explained, the SSA can correct an individual's earnings for a particular year if an application for benefits is filed before the "time limit" for that year ends. *See id.* (citing 20 C.F.R. § 404.822(c)(2)). Time limit means a period of time 3 years, 3 months, and 15 days after any year in which an applicant received earnings. *See* 20 C.F.R. § 404.802. Because Plaintiff filed an application for retirement benefits in May 2015, the time

3

limits for 2013, 2014, and 2015 had not yet expired and could be corrected.[3] *See id.* The ALJ then noted:

> The time limit for the years 2008 and 2012 had expired by the time the claimant filed his application in May 2015, but other circumstances permit correction of his earnings for those years (20 CFR 404.822(e)). For example, there is a July 1, 2014 report of contact regarding the bonafide nature of the claimant's company (Exhibit 7), so an investigation was started within the time limits for the years 2011 and 2012 (20 CFR 404.822(e)(1)), which is an other circumstance.[4]

*Id.* at 16. The ALJ did not explain how Plaintiff's 2009 and 2010 earnings were timely deleted. *See id.* Nor did the ALJ cite any record evidence to support the conclusion that the 2008 earnings were timely deleted. *See id.*

The ALJ then went on to explain why the SSA correctly determined that Plaintiff's alleged earnings from ILHD, Inc. could not count as self-employment

---

[3] The Court notes that the time limit for 2012 (which would be in mid-April of 2016) had also not yet expired at the time Plaintiff filed his May 2015 application for benefits—although the ALJ concluded otherwise. *See* AR at 16.

[4] 20 C.F.R. § 404.822(e)(1) provides:

> We may correct an earnings record if the correction is made as the result of an investigation started before, but completed after the time limit ends. An investigation is started when we take an affirmative step leading to a decision on a question about the earnings record, for example, an investigation is started when one SSA unit asks another unit to obtain additional information or evidence. We will remove or reduce earnings on the record under this paragraph only if we carried out the investigation as promptly as circumstances permitted.

4

earnings or wages and relied on, among other things, Plaintiff's inconsistent representations and a lack of supporting evidence, noting specifically the lack of W-2 forms in his file. *See id.* at 17–19. The ALJ also concluded that, regardless of whether Plaintiff's earnings could be characterized as self-employment or wages, Plaintiff had not proven that ILHD, Inc. was a bona fide business. *See id.* at 19–21. Plaintiff appealed the ALJ's decision to this Court.

**B.     District Court Proceedings**

In seeking reversal of the ALJ's decision, Plaintiff raised numerous objections, specifically arguing that the SSA improperly deleted his wages and incorrectly concluded that ILHD, Inc. was not a bona fide business. *See* ECF Nos. 26, 30. The Commissioner asked the Court to affirm the ALJ's decision. *See* ECF No. 29. With regard to the timeliness of deletions, the Commissioner repeated the ALJ's conclusions stated above. *See id.* at 12, 20. However, the Commissioner provided more explanation for why Plaintiff's alleged income from his 2008 earnings record was timely deleted—citing specifically to a May 2010 investigation that the ALJ had not cited. *Compare id.* at 20, *with* AR at 16. And like the ALJ, the Commissioner did not explain why Plaintiff's 2009 and 2010 earnings were timely deleted. Because crediting Plaintiff with those earnings appeared to be potentially outcome determinative, *see, e.g.*, AR 66, 90, 193, 208–09, the Court issued an Order instructing the Commissioner to explain whether

those earnings were timely deleted, why the Commissioner had not addressed Plaintiff's 2012 earnings in his answering brief, and whether his responses impacted his position on whether Plaintiff had sufficient quarters of coverage to be eligible for benefits.  *See* ECF No. 33.

The Court was particularly concerned that, given the ALJ had not explained his reasoning regarding the timeliness of the deletions of the 2009 and 2010 earnings, it would be improper for the Court to engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] may have been thinking," particularly when it may implicate findings regarding when an SSA investigation began and if it was carried out promptly.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citations omitted); *see also* 20 C.F.R. § 404.822(e)(1). Rather than respond directly to the Court's specific questions, the Commissioner filed a Motion for Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g).  *See* ECF No. 36.  In the motion, counsel for the Commissioner explained that in seeking additional information from the Center for Disability and Programs Support ("CDPS"), he became aware that the Office of Central Operations posted self-employment income on Plaintiff's earnings record in 2016, but then deleted all self-employment income and wages for 2007 through 2015 from Plaintiff's record later that year.  *Id.* at 3.  Then in July 2017, that Office reposted $12,000 in wages from ILHD, Inc. for 2008 through 2014 and $5,000 in wages from ILHD, Inc. for

2015. *See id.* This amendment occurred after Plaintiff's W-2 forms for these years were located in an agency repository.[5] *See id.* Since his wages were reposted in July 2017, there have been no changes to Plaintiff's earnings record. *See id.* The Commissioner notified Plaintiff that he would agree to voluntarily remand the action for further administrative proceedings; however, Plaintiff would not agree to a voluntary remand. *See id.* at 3–4. The Commissioner argues that remand for additional administrative proceedings is appropriate here, given this ambiguity in the record, the presence of W-2 forms that were not part of the administrative record and therefore not considered by the ALJ, and the need for the ALJ to resolve these ambiguities and make the findings in the first instance about their impact on Plaintiff's quarters of coverage. Plaintiff opposes the motion to remand. *See* ECF No. 40.[6]

---

[5] Although the W-2 forms were not part of the record before the ALJ, there were documents in the record that appear to reflect the reposting of his wages in 2017. *See* AR 367 (correspondence from SSA to Plaintiff in July 2017 reflecting these earnings amounts).

[6] When the Court set the briefing schedule on the Commissioner's motion to remand, it instructed Plaintiff that he could file an opposition to the motion, but that additional filings required leave of Court. *See* ECF No. 37. Plaintiff nonetheless filed three separate oppositions without seeking leave of Court. *See* ECF Nos. 38, 39, 40. Because Plaintiff's third filing (ECF No. 40) is nearly identical to his other filings (ECF Nos. 38, 39), but does contain some additional arguments, the Court will consider only Plaintiff's third filing. *See also* ECF No. 41.

## II.   DISCUSSION

### A.   The Ordinary Remand Rule Applies

The Ninth Circuit has explained that,

> when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The Supreme Court has referred to this remand requirement as the "ordinary 'remand' rule." *Gonzales v. Thomas*, 547 U.S. 183, 185 (2006) (internal quotation marks omitted).

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (alterations in original) (footnote omitted). The ordinary remand rule applies in social security cases. *See id.* Under it, the Ninth Circuit will "generally remand for an award of benefits only in rare circumstances, where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Id.* at 1100 (citations and internal quotation marks omitted). The decision to depart from the ordinary remand rule and instead remand for an award of benefits is made pursuant to a three-step analysis under the "credit-as-true" rule. *See id.* at 1100–01. First, the Court asks whether the ALJ failed to provide sufficient reasons for rejecting evidence and, second, if he did, the Court determines whether the record has been fully developed or if there are matters that must be resolved in order to make a benefits determination. *See id.* If the record

8

has not been developed thoroughly, or if there are inconsistencies, conflicts, or gaps in the record, then a remand for further administrative proceedings is necessary. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017). If there are no outstanding issues and further proceedings would not be useful, the Court can find relevant testimony credible as a matter of law. *See Treichler*, 775 F.3d at 1101.

    Here, as described above, the ALJ did not provide sufficient reasons why some of Plaintiff's earnings were timely deleted. With regard to certain years, evidence in the record could support the ALJ's ultimate conclusion. For example, Plaintiff's 2008 earnings could have been timely deleted based on a 2010 investigation, *see* AR at 27; however, the ALJ did not cite that investigation, *see* AR at 16. Similarly, it is possible Plaintiff's 2010 earnings were timely deleted if an investigation commenced in *February* 2014, *see* AR at 28–29; however, the ALJ made no mention of why these 2010 earnings were timely deleted and elsewhere described an investigation that began in *July* 2014, *see* AR at 16. With regard to other years, e.g., Plaintiff's 2009 earnings, the ALJ did not articulate any basis for their timely deletion, the Commissioner has not offered any to this Court, and this Court is unaware of any evidence in the record that could support that conclusion. *See* AR at 16; ECF No. 29 at 20. Remand is therefore necessary to resolve these outstanding issues. *See Treichler*, 775 F.3d at 1101; *see also Leon*,

880 F.3d at 1047 (noting departure from ordinary remand rule is appropriate "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits").

This is particularly so here, given the Commissioner now concedes there are W-2 forms in Plaintiff's file, which could support Plaintiff's position he earned wages from ILHD, Inc. between 2008 and 2015. Because the ALJ relied on a lack of W-2 forms to uphold a denial of benefits,[7] it is almost certain that presentation of this additional evidence could prove enlightening on remand. *See Treichler*, 775 F.3d at 1101. The ALJ will also need to consider this evidence alongside the conflicts in the record—which were not resolved in the first instance below—regarding Plaintiff's earned quarters of credit.[8] Although the Commissioner has

---

[7] *See* AR at 19 ("There are no W-2 forms in the file showing that the claimant had an employer who paid him wages as an employee, even though W-2's were an example of proof of wages that could be submitted[.]  The claimant stated that he paid Social Security taxes . . . , but as discussed above there are no W-2's in the file, so there is no evidence showing that Social Security taxes were withheld from his alleged wages.").

[8] *See* AR at 66 (July 2015 document indicating 2008, 2011, and 2013 earnings could not be counted); AR at 90 (February 2016 document indicating no earnings from 2007 through 2013 could be counted); AR at 192 (March 2016 document indicating self-employment earnings for 2008 through 2011 and 2013); AR at 193 (July 2016 document indicating no self-employment income from 2008 to 2015 could be counted); AR at 209 (November 2016 document showing earned quarters of coverage in 2009, 2010, 2012, and 2013, but not in 2008, 2011, 2014, or 2015); AR at 367 (July 2017 document indicating earnings from 2008 through 2015).

now acknowledged that self-employment earnings were added and then deleted in 2016, and that wages were reposted in 2017, there was already some evidence of this in the record before the ALJ.  *See* AR at 90, 192–93, 367.  However, the ALJ did not address this evidence or resolve the conflicts in this evidence.  Nor did the ALJ adequately develop the record to explain why 2017 SSA records appear to show Plaintiff's ILHD, Inc. wages from 2008 to 2015 despite his application for benefits being denied in 2015 and his request for reconsideration being rejected in 2016 because earnings from ILHD, Inc. could not be counted.

While this additional evidence regarding Plaintiff's W-2 forms and wages being reposted to Plaintiff's earnings record may suggest that remand for an award of benefits is warranted, the Court concludes that remand for further administrative proceedings is more appropriate.  First, neither side has articulated how an earnings record amendment functionally impacts an earlier application denial, if at all.  In addition, the Ninth Circuit has explained that even in the rare circumstance where the conditions of the credit-as-true rule are met, a court nonetheless has "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact" entitled to benefits under the Social Security Act.  *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Leon*, 880 F.3d at 1045–46.  The Court concludes that, given the outstanding issues and ambiguities that must be addressed alongside new evidence not

11

previously before the ALJ, the conditions of the credit-as-true rule have not been met, and so the ordinary remand rule applies here. *See Treichler*, 775 F.3d at 1101 ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." (citation and footnote omitted)). However, even if those conditions had been met, the Court would exercise its discretion to conclude, in light of the record as a whole, that remand for additional proceedings is still necessary in light of evidence creating doubts about Plaintiff's entitlement to benefits. *See* AR at 19–20 (concluding Plaintiff had not proven ILHD, Inc. was a bona fide business based on lack of supporting evidence); AR at 27–28, 34 (Plaintiff's admitted prior misrepresentations to SSA).

Because the case is remanded for further proceedings, the Court need not address Plaintiff's other arguments. Those issues can be addressed on remand, and rulings here would not provide Plaintiff any relief beyond what is already granted through this Order.[9] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to

---

[9] This includes Plaintiff's argument regarding the translation of his testimony at the hearing. Plaintiff concedes the ALJ did not rely on the testimony Plaintiff claims was mistranslated. *See* ECF No. 26 at 11–12. Nor did Plaintiff cite any law or authority to support his claim that the translation was improperly certified and so cannot constitute evidence. *See* AR 525 (interpreter duly sworn to act as interpreter); AR 551 (same). Plaintiff can renew this argument on remand.

reach [plaintiff's] alternative ground for remand."). The Court does conclude, however, that Plaintiff cannot bring a civil rights claim against the Commissioner premised on the denial of benefits. *See* 42 U.S.C. § 405(h); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000); *Hooker v. U.S. Dep't of Health & Human Servs.*, 858 F.2d 525, 529–30 (9th Cir. 1988). The Court therefore rejects Plaintiff's argument that a potential civil rights damages award justifies denying the Commissioner's motion to remand.

Finally, while the Court commends agency counsel's willingness to seek remand in this action, it nonetheless notes that more diligence and attentiveness on his part at the outset could have avoided unnecessary work for the Court and the parties, and resulted in more prompt remand to determine Plaintiff's eligibility for benefits. Particularly here, where a pro se claimant is involved, more attention to detail on the part of the agency could have better ensured the efficacy and fairness of this process, which can take years to provide benefits to eligible claimants. Among other matters, the fact that the reposting of wages occurred in July 2017— nearly three years ago and prior to any hearing before the ALJ—concerns the Court and understandably frustrates Plaintiff.

### B.     Instructions on Remand

The Court, having GRANTED Defendant's motion to remand, ORDERS that this action be remanded to the Commissioner for further administrative action

pursuant to 42 U.S.C. § 405(g).  Upon remand, the Appeals Council should remand the case to an ALJ for a new hearing and decision on an open record on the issues discussed herein.  Specifically, the Appeals Council shall direct the ALJ to fully develop the record related to Plaintiff's earnings from 2008 through 2015 and reevaluate whether all or part of these earnings were deleted.  This includes, but is not limited to, an evaluation of Plaintiff's W-2 forms and SSA documentation from 2017 indicating Plaintiff's wages for these years were reposted to his earnings record.

If any of Plaintiff's earnings for these years were deleted, the ALJ shall reevaluate whether this was timely and proper under the Social Security Act and applicable regulations.  If Plaintiff still has earnings for all or part of the period between 2008 and 2015, the ALJ shall determine the impact on his quarters of coverage and eligibility for benefits under Title II of the Social Security Act.

//
//
//
//
//
//
//

## III.   CONCLUSION

For the foregoing reasons, the Commissioner's motion to remand is GRANTED, and this action is REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 4, 2020.



Jill A. Otake
United States District Judge

Civil No. 19-00390 JAO-RT, *Suzuki v. Saul*, ORDER GRANTING DEFENDANT'S MOTION TO REMAND TO SOCIAL SECURITY ADMINISTRATION AND REMANDING FOR FURTHER PROCEEDINGS

15